IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2020

## STATE OF TENNESSEE v. MICHAEL EUGENE RUTHERFORD

**Appeal from the Criminal Court for Knox County
Nos. 112418, 112654      Steven W. Sword, Judge**

_____

### No. E2019-01319-CCA-R3-CD

_____

The defendant, Michael Eugene Rutherford, appeals his Knox County Criminal Court guilty-pleaded convictions of aggravated assault, simple possession, driving under the influence ("DUI"), vandalism, and violating the financial responsibility law, arguing that the trial court erred by imposing a fully incarcerative sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and, ROBERT H. MONTGOMERY, JR., JJ., joined.

Michael Cabage, Knoxville, Tennessee, for the appellant, Michael Eugene Rutherford.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Charme P. Allen, District Attorney General; and Philip Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Knox County Grand Jury charged the defendant with possession of .5 grams or more of cocaine with the intent to sell or deliver, aggravated assault, and simple possession of marijuana in case number 112418 and with second offense DUI, vandalism of property valued at $1,000 or less, and violating the financial responsibility law in case number 112654. Pursuant to a plea agreement with the State, the defendant pleaded guilty in case number 112418 to two counts of simple possession and one count of aggravated assault and in case number 112654 to one count of DUI, one count of vandalism, and one count of violating the financial responsibility law. The agreement

provided for a Range II, total effective sentence of 10 years, with the manner of service of the sentence to be determined by the trial court following a sentencing hearing.[1]

At the June 2019 sentencing hearing, the defendant acknowledged that he knew "plain and clear" that he was guilty of the offenses to which he had pleaded guilty but nevertheless stated, "What I don't know is, I don't know how I got there." He said that he was taking so much medication and consuming so much alcohol at the time of the offenses "that I can't tell the story of why I was there without feeling like I'm lying because I don't know I was there." He added, "I did hit a guy. But that night I was so incoherent that I can't remember everything. . . . I can't honestly remember, except for I know that I felt threatened." He admitted that he "did have pot in my pocket. I did get a DUI." He maintained, however, that he had not used cocaine "since I got out of prison, which has been quite a while ago."

He observed that he "was a real bad guy for a long time" but that, since his arrest for assault, he had "got real clean," started a goat farm, and begun repairing cars for fellow church members. The defendant insisted that he "had a good run" after completing "parole the last time" and that the offenses in this case were essentially a "one-night incident." He claimed that it had "been a year and three months" since he had consumed alcohol or drugs.

The defendant's father insisted that the defendant had finally changed his ways and asked the court to place the defendant on probation. He said that he needed the defendant's assistance at home because he had been diagnosed with cancer.

The defendant asked the court to place him on probation. The State opposed a probationary placement, noting first that the defendant had given multiple different versions of the events that led to his arrest and that in all of his versions he perceived himself as a victim. The State also noted that, despite the defendant's assertion that he had not used cocaine in nearly 10 years, "this whole thing was over an attempt to purchase cocaine." The prosecutor observed that "the independent witnesses saw [the defendant] drag the victim into a car, take off with him, bring him back, dump him out [of] the car and kick him about the body and head." The State pointed out that the defendant had "a history of violent crimes" and that "the system has been dealing with him since the age of 19." The State detailed the defendant's poor past performance of sentences involving release into the community:

---

[1]     The transcript of the guilty plea hearing was not included in the record on appeal. We glean the terms of the agreement from the March 25, 2019 minute entry memorializing the defendant's pleas.

He started out on diversion. Of course, got that revoked. He committed [a] felony. He's got probation, probation revoked. He absconded, probation again revoked, boot camp. Went to TDOC, got boot camp, failed to report after he got put on boot camp, probation, absconded from boot camp, probation, probation revoked, absconded again on a different set of new charges in 2009. He absconded in 2010, violation, probation revoked. Finally paroled out.

The State also highlighted "the record of his disciplinary history while in TDOC," which the prosecutor characterized as "alarming" evidence of "his dangerousness."

An assessment from the Knox County Sheriff's Office Community Alternatives to Prison Program ("CAPP") reflected that the defendant was not eligible for placement in the program "due to the violent nature of his offense and a criminal history that includes multiple assault charges." The report also noted the agency's concern that the defendant was "a multistate offender with a poor history of . . . serving sentences in the community" and that the defendant had incurred "at least 10 disciplinary infractions" in the Department of Correction ("TDOC") and "an additional disciplinary [infraction] while in the Knox County Detention Facility." Finally, the agency noted that the defendant "failed to contact CAPP as ordered for the assessment."

An assessment from TDOC indicated that the agency had determined that the defendant was not an appropriate candidate for placement on enhanced probation. The assessing officer observed that the defendant "has been committing criminal offenses his entire adult life" and had previous unsuccessful placements on probation, enhanced probation, parole, and boot camp. The officer noted that despite these placements, stints in TDOC, and participation in alcohol and drug addiction treatment programs, the defendant continued "to engage in criminal behavior." Additionally, when questioned about the assault offense in case number 112418, "the defendant denied any memory of assaulting his victim; he stated that he remembers drinking and waking up while someone was robbing him."

The presentence report established that the 41-year-old defendant's criminal history began at the age of 19, included more than a dozen convictions, and spanned his entire adult life. The report indicated that the defendant's previous sentences to probation, community corrections, and boot camp had all been revoked at some point and that he had absconded on more than one occasion. The defendant also incurred disciplinary infractions while incarcerated.

The trial court found that the defendant had a clear history of alcohol abuse that was "not inconsistent with" the defendant's assertion that "he really didn't remember what all happened because he'd been consuming alcohol." The trial court stated that it had reviewed the reports issued by "Enhanced and CAPP," both of which indicated that "they do not believe he is appropriate for supervision in the community under their programs." Regarding the defendant's history of community supervision, the court found:

> He's been on regular probation. He's been on Enhanced, been revoked from both of those. He's been on parole, was revoked from that. He was released on boot camp, revoked from that. There's been treatment efforts through Centerpoint and Jellinek. And Jellinek is probably the best one that we have in Knox County.

The court found that confinement was necessary to protect the public from the defendant given his long criminal history and the violent nature of his conviction offense. The court also concluded that confinement was necessary in light of the defendant's frequent unsuccessful attempts at sentences involving release into the community. Finally, the court determined that the defendant's history militated against a finding that he was amenable to correction. Based upon these findings, the trial court ordered the defendant to serve his entire 10-year effective sentence in confinement.

In this timely appeal, the defendant contends that the trial court erred by imposing a fully incarcerative sentence. The State asserts that the record supports the denial of alternative sentencing.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

-4-

Although the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence, *see* T.C.A. § 40-35-103(5), "[c]onvicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation" are not considered favorable candidates for alternative sentencing, *id.* § 40-35-102(5)-(6)(A).

That being said, the imposition of an effective 10-year sentence in this case mandated the trial court's considering probation as a sentencing option. *See* T.C.A. § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less . . . ."). Traditionally, the defendant has borne the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "subserve the ends of justice and the best interest[s] of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000)).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1).

In our view, the trial court did not abuse its discretion by ordering a sentence of full confinement in this case. The record establishes that the defendant's criminal history spanned more than 20 years and included numerous revocations of community-based sentences. He was rejected by two supervision programs on the basis of his lengthy criminal history and failure to successfully complete a variety of sentences involving release into the community. Under these circumstances, the record supports the trial court's finding that measures less restrictive than confinement had frequently and recently been applied unsuccessfully to the defendant.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE